## Sewickley Dairy Company's Assigned Estate.

198        63
28 SC ²166

*Assignment for creditors—Surcharge—Corporation—Neglect of assignee to sue for stock subscriptions.*

An assignee for creditors of an insolvent corporation will not be surcharged with the amount of unpaid stock subscriptions which he did not collect, and which became barred by the statute of limitations, where it appears that he used ordinary care, prudence and diligence in his management of the estate, and as to the stock subscriptions had taken the opinion of counsel, and had been advised that if he had any right to sue on behalf of the company, which was at least doubtful, it could not be exercised until the other assets had been administered, and shown to be insufficient, and it also appears that none of the creditors called upon him to do anything in reference to the unpaid subscriptions.

An assignee for creditors is not in any sense an insurer that the debts of his assignor will be paid, or even that the assets in his hands will produce their highest value for such payment. He is bound to use diligence, prudence and reasonable judgment and skill, but using these he is not responsible further. The advice of counsel is evidence of care and prudence.

Argued Oct. 22, 1900. Appeal, No. 155, Oct. T., 1900, by T. Brent Swearingen, assignee of Fleming Brothers, from order of C. P. No. 1, Allegheny Co., March T., 1891, No. 480, dismissing exceptions to auditor's report, in In re Voluntary Assignment of the Sewickley Dairy Company. Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Exceptions to auditor's report. See Swearingen v. Sewickley Dairy Company, post, p. 68.

From the record it appeared that W. H. S. Thompson, Esq., was appointed auditor to audit the final account of S. A. Duncan, assignee of Sewickley Dairy Company.

Before the auditor, T. Brent Swearingen, assignee of Fleming Brothers, a creditor of the Sewickley Dairy Company, sought to surcharge the accountant with the amount of unpaid stock subscriptions which he had not collected from the dairy company. The assignment to the accountant was made on January 5, 1891, and his final account was filed on June 13, 1897. On the subject of the failure of the assignee to collect the unpaid stock subscriptions, the auditor found the following facts :

1. The stockholders of the Sewickley Dairy Company, at a meeting held on September 15, 1888, for the purpose of increasing the capital stock from $7,000 to $400,000, passed a resolution " that the directors of the company be and are hereby authorized to issue said stock from time to time in such manner as they may deem proper for property, real and personal, to be purchased by the company or upon subscription."

2. From time to time thereafter, to and including May 14, 1889, the board of directors made certain calls or assessments upon the capital stock, aggregating seventy-five per cent of the par value thereof, which assessments were duly paid by the stockholders.

3. On May 14, 1889, at a meeting of the board of directors, it was resolved " that 300 shares of the capital stock of the company be reserved as treasury stock only to be sold at par on order of the board of directors."

4. On June 11, 1889, at a regular meeting of the board of directors, the following resolution was adopted: " Resolved, That the company purchase from J. K. Fleming the right of way for a road from the borough of Sewickley to the property of the company, running through the property of John C. and David Anderson and others, for the sum of $42,500 in cash. On motion of Mr. Duncan, the treasurer was authorized to call an assessment of $25.00 per share on the stock subscribed, payable July 1, 1889, to pay for the above right of way."

5. The right of way referred to in the resolution was a right for the construction of a highway through certain properties leading from the borough of Sewickley to a dairy farm, by which the latter could be reached over a shorter and better route than any already existing.

6. This right of way Mr. J. Kidd Fleming, vice president and active manager of the company, proposed to deliver to the company at an estimated value of $42,500, being twenty-five per cent of the par value of 1,700 shares of stock, making said stock full paid. This proposed transfer was to be made by Mr. Fleming on behalf and for the benefit of the individual holders of the 1,700 shares of stock, the company to credit said stockholders with $25.00 per share upon each share of stock held by them.

7. This right of way was never transferred to the company.

8. No assessment or call was actually made for the said twenty-five per cent nor was any portion of it paid in cash, nor any stockholder requested to pay the same.

9. At that time, to wit: June 11, 1889, there had been sold, as shown by the stock book, to Cochran Fleming, 2,000 shares, and to four other parties together 100 shares, and subsequent to this date 1,060 shares were sold to various persons, and 200 shares issued as collateral security for loans negotiated by the company. The stock thus sold, together with the 300 shares reserved as treasury stock, left unissued, at the date of the assignment on January 5, 1891, 340 shares.

10. All stock sold after June 11, 1889, was sold upon the understanding and agreement that the holder of the stock so purchased should be required to pay in full for his stock only seventy-five per cent of the par value thereof. And upon the payment of that amount where certificates were issued, they showed the stock to be full paid and nonassessable.

11. The appraised value of the personal property passing to the assignee was $16,755.38. That of the realty, $137,900, or a total valuation of $154,655.38.

12. The assets of the company, at the time of the assignment, consisting of the real and personal property included in the appraisement, exceeded its liability.

13. The assignee, S. A. Duncan, during the continuance of his trust, sold, practically, all of the personalty for sums amounting to $30,000 or more, and had sold about 220 acres of land at an average price of about $70.00 per acre, the land remaining unsold being of as good a quality as that already sold.

14. The assignee exercised ordinary care, prudence and diligence in disposing and endeavoring to dispose of the property of the company.

15. At no time during his trust were the assets of the company, exclusive of the stock subscription account, apparently less than the liabilities.

16. Mr. Duncan consulted L. M. Plumer, Esq., and E. S. Craig, Esq., competent lawyers, the former having been attorney for the company from the time of its incorporation, as to proceeding against the stockholders to collect the twenty-five per cent remaining unpaid. He laid the facts fully before them, and was advised that he could not maintain his action for its collection, at

least until the other assets of the estate were exhausted. He followed the advice of his attorneys and did not attempt at any time to collect from any of the stockholders the said twenty-five per cent.

17. The assignee in not proceeding for the collection of the twenty-five per cent, under the advice of his attorneys, acted in good faith, and the auditor cannot find that in so doing he was guilty of negligence.

The auditor found under the above facts that the accountant should not be surcharged.

Exceptions to the auditor's report were overruled by the court.

*Error assigned* was the order overruling exceptions to auditor's report.

*W. K. Jennings* and *T. M. Henry,* for appellant.—We do not propose to stultify ourselves by taking one position in this case and exactly the opposite in the other cases. What we claim is this: If the opinion in Franklin Savings Bank v. Bridges, 8 Atl. Repr. 611, can be distinguished or is to be regarded as a dictum, and the learned judge below was right in assuming that it had been overruled by Lane's App., 105 Pa. 49, the decree in this case must be affirmed. If the statute of limitations did not begin to run, Duncan, the assignee, was not in fault, because there was still time and opportunity for proceeding against the delinquent subscribers, and therefore, under Lane's App., the decree against the delinquent subscribers must be affirmed also.

*J. A. Langfitt,* with him *L. M. Plumer,* for appellee.—The appellee, in not proceeding against the stockholders for an alleged unpaid balance upon their stock, was not guilty of such negligence as would justify his being surcharged with such balances: Fulton's Est., 51 Pa. 211; Detwiler's App., 96 Pa. 325; Wright v. Wigton, 84 Pa. 163; Morris's App., 88 Pa. 379; Pleasanton's App., 99 Pa. 362.

OPINION BY MR. JUSTICE MITCHELL, January 7, 1901:

Notwithstanding the range of the argument this case raises but one question, and that is whether the auditor and the court

below erred in refusing to surcharge the accountant for failure to bring suit against certain stockholders for an unpaid balance of their subscriptions. The special facts in regard to those stockholders will be considered in the case of Swearingen v. Sewickley Dairy Company, Byer's Appeal, post, p.    , and are not material here.

The accountant was assignee for the benefit of the creditors of the Sewickley Dairy Company. When he took charge as assignee he found that although the company was insolvent in the sense that it could not pay its debts currently as they fell due, yet its assets were apparently nearly double its liabilities. He sold the personalty for nearly twice its appraised value, and a part of the realty, also at a price above its appraisement. The largest part of the assets, however, was in land, which was still in his hands, when owing to dissatisfaction and differences of opinion he resigned and filed his account. The auditor found expressly that the assignee had used ordinary care, prudence and diligence in his management of the estate, and in reference to the particular item on which it is now sought to surcharge him, the auditor found that he had taken the opinion of counsel and had been advised that if he had any right to sue on behalf of the company, which was at least doubtful, it could not be exercised until the other assets had been administered and shown to be insufficient.

With these facts found by the auditor and not now disputed, there is nothing on which a surcharge could be based. An assignee is not in any sense an insurer that the debts of his assignor will be paid, or even that the assets in his hands will produce their highest value for such payment. He is bound to use diligence, prudence and reasonable judgment and skill, but using these he is not responsible further. The advice of counsel is evidence of care and prudence.

The point is made by the appellee that appellant has no standing to except or to bring this appeal. In the view we take this point becomes immaterial.

Judgment affirmed.